35 C.C.P.A.(Patents)

## Application of HAMPEL.
### Patent Appeal No. 5320.

Court of Customs and Patent Appeals.

Nov. 17, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims 1 to 9, inclusive, of an application for a patent for new and useful improvements in Chemical Manufacture. The claims were held to be unpatentable over the patent to Basel et al., 2,178,622, November 7, 1939.

Claims 4, 6 and 9 are illustrative of the subject matter and read as follows:

"4. In the pyrolysis of hexachloroethane for the production of tetrachloroethylene, the improvement which comprises effecting the pyrolysis in the presence of a paraffin hydrocarbon containing not more than four carbon atoms per molecule."

"6. A process of producing olefinic carbon chloride and alkyl chlorides which comprises subjecting a carbon chloride to pyrolysis and admixing a paraffin hydrocarbon with admixed products of the decomposition prior to the cooling of said products to a temperature at which chlorine resulting from the decomposition recombines with other decomposition products."

"9. A process of chlorinating paraffin hydrocarbons containing not more than four carbon atoms per molecule which comprises heating an admixture of hexachloroethane and the paraffin hydrocarbon to be chlorinated in a reaction zone to a temperature within the range of about 300° C. to about 500° C., separating tetrachloroethylene which is formed by the reaction from the reaction products including the alkyl chlorides formed, rechlorinating the tetrachloroethylene thus separated to hexachloroethane and returning the reformed hexachloroethane to the reaction zone."

The application relates to an improved process in the manufacture of the chlorinated compounds tetrachloroethylene and alkyl chlorides. The materials used in the process are hexachloroethane and a paraffinic hydrocarbon which preferably contains not more than four carbon atoms per molecule. Hexachloroethane is a paraffinic carbon chloride bearing the chemical formula $C_2Cl_6$. Tetrachloroethylene is an olefinic carbon chloride with the chemical formula $C_2Cl_4$. The paraffin hydrocarbons containing not more than four carbon atoms per molecule are methane, the formula for which is $CH_4$, ethane, the formula for which is $C_2H_6$, propane, which has the formula $C_3H_8$, and butane, the formula for which is $C_4H_{10}$.

In his process appellant heats hexachloroethane to a temperature in the range of about 300° C. to 500° C., decomposing it into a mixture of tetrachloroethylene and chlorine. In order to prevent recombining of the chlorine and tetrachloroethylene into the starting substance, there is added before heating or after decomposition of the hexachloroethane and before cooling a paraffinic hydrocarbon containing not more than four carbon atoms. The chlorine produced from the decomposition of the hexachloroethane reacts with the paraffinic hydrocarbon forming an alkyl chloride and hydrochloric acid. The process may be further described by the following equation with the use of ethane as the paraffinic hydrocarbon:

$$C_2Cl_6 + C_2H_6 \longrightarrow C_2Cl_4 + C_2H_5Cl + HCl$$

The reference patent relates to what is said to be a simple and efficient process for the production of tetrachloroethylene. It discloses the use of hexachloroethane, acetylene, ethylene, dichloroethylene, trichloroethylene and tetrachloroethane. In the process hexachloroethane is heated to a temperature of from 200° C. to 400° C. in the presence of acetylene, ethylene, dichloroethylene, trichloroethylene, or tetrachloroethane in a catalyst chamber filled with glass shards, activated carbon, or activated

carbon impregnated with copper chloride. The result of the process is the production of tetrachloroethylene and hydrochloric acid "at an almost theoretical transformation." The process may also be illustrated, using ethylene as the reactant with hexachloroethane, as follows:

$$4 \ C_2Cl_6 + C_2H_4 \longrightarrow 5 \ C_2Cl_4 + 4HCl$$

Claims 8 and 9 differ from the other claims by the process of rechlorinating the tetrachloroethylene to form hexachloroethane and recirculating the latter to the pyrolysis zone where it serves as one of the raw materials in the process so that eventually the final products of the process defined in those claims are alkyl chloride and hydrochloric acid.

The Primary Examiner in rejecting all of the claims as lacking invention over the prior art pointed out that the process of appellant differs from that of the reference only in the use of paraffin hydrocarbons instead of the ethylene, acetylene, chlorinated paraffin, or chlorinated olefin of the patent. He termed each of the second reactants disclosed in the prior art and in the claims to be a "chlorine acceptor" and in this connection states as follows:

"In the case of all the chlorine acceptors of the reference, except acetylene, as well as in the claimed process, the chlorine reacts substitutively with the chlorine acceptor, the corresponding quantity of hyrogen chloride being formed. The overall general equation for the reaction in each case may be written as follows:

any particular 'RCL' is desired as a product, the corresponding 'RH' can be used as the chlorine acceptor."

The claims were also rejected as being based on an inadequate disclosure.

With respect to claims 8 and 9 the examiner further stated that the process merely emphasizes the production of alkyl chlorides and if such products were desired to the exclusion of tetrachloroethylene no invention would be involved in rechlorinating the tetrachloroethylene to hexachloroethane and recycling it to the pyrolysis zone. The examiner observed that it did not appear what purpose would be served by the processes defined in claims 8 and 9 for the reason that a mixture of chlorine and tetrachloroethylene to chlorinate with paraffin hydrocarbon could be made in the first place.

The Board of Appeals in its decision rejected the over-all equation as applying to the process of the patent for the reason that counsel for appellant in his brief had set out two equations showing the reaction occurring with acetylene and trichloroethylene which indicated that no alkyl chloride corresponding to the "RC1" of the examiner's equation is formed. The board agreed with counsel for appellant, stating that it is nowhere suggested in the reference patent that any chloride is produced, but only tetrachloroethylene with a corresponding quantity of hydrochloric acid.

The board stated that notwithstanding the fact that the process of the prior art contains no suggestion of the production

$$Cl_3 - C \ Cl_3 + RH \longrightarrow Cl_2C = CCl_2 + RCl + HCl$$

$$\text{Hexachloroethane} \qquad \text{Tetrachloroethylene} \qquad \begin{array}{c} \text{Hydrogen} \\ \text{chloride} \end{array}$$

" 'R' in the claimed process is an alkyl radical whereas in the process of the reference it may be chloralkyl or alkenyl. It is apparent that the function of RH is the same in each case and no invention is accordingly considered to be involved in substituting one compound known to react with chlorine by another such compound.

"It is, moreover, apparent that the nature of the product designated as 'RCl' in the above equation depends on the particular chlorine acceptor, 'RH' which is used. If

of any chloride it was "inclined" to agree with what it stated was the decision of the examiner that it would be within the skill of a trained chemist to select the reactants of appellant to react with the chlorine produced by the pyrolysis of hexachloroethane in order to produce the desired chloride.

In a subsequent decision, following a request for reconsideration, the board reversed the decision of the examiner on the ground of inadequate disclosure. The sole

question before us, therefore, is whether or not it would be obvious to one skilled in the art to employ paraffin hydrocarbons such as are used by appellant in his process.

It is admitted to be old and is so acknowledged in the application of appellant that a mixture of free chlorine and tetrachloroethylene can be formed by heating hexachloroethane. It is also stated in the brief of appellant and pointed out in his specification that the reaction of free chlorine with gaseous paraffin hydrocarbons is difficult to control and frequently results in violent explosions in the absence of some effective influence. This is not controverted by the solicitor for the Patent Office.

It is undisputed that neither of the only two hydrocarbons (acetylene and ethylene), nor any of the hydrocarbon chlorides used as the second reactants in the process of the reference are paraffin hydrocarbons, nor are they homologues (members of the paraffin series of hydrocarbons), or isomers of paraffin hydrocarbons.

It will be observed that the process of the Basel et al. patent consists in passing of a mixture of hexachloroethane and a second reactant over a heated catalyst in a catalyst chamber, while in the process defined by the rejected claims no catalyst is employed. This seems to us to show one of the differences between the two processes. It may also be noted that the process of the Basel et al. patent results in the production only of tetrachloroethylene and hydrochloric acid, whereas the process of appellant produces tetrachloroethylene, alkyl chlorides and hydrochloric acid.

The second reactants of appellant are clearly not those employed in the process of the reference, nor is the process the same. We hold, therefore, that the steps in the process of appellant are not the same as those in process of the reference, as contended by the solicitor for the Patent Office.

We do not agree with the holding of the board that in view of the Basel et al. patent it would be obvious to a skilled chemist to use the second reactants of appellant's process, if so desired. The Primary Examiner would seem to be one highly skilled in the art involving the subject-matter of his examinations. Nevertheless, the examiner here mistakenly pointed out that the process of appellant and that of the reference could be illustrated by the same general equation and thus appellant's process would be obvious to one skilled in the art. Upon a showing by counsel for appellant that such general equation was in error the board reversed the reasons given by the examiner for considering appellant's process to be obvious and, therefore, it seems to us, eliminated the very holding of obviousness from the examiner's statement.

Appellant in his brief points out, and we think properly so, that while the equation constructed by the Primary Examiner applies in all respects to the process of appellant, it does not and could not illustrate the process disclosed in the Basel et al. patent.

There is no question here but that the process of appellant is new, useful, and produces valuable results. We have no doubt that the examiner erred in illustrating the alleged obviousness of employing appellant's second reactants in view of the prior art. The bald statement by the Board of Appeals that in view of the prior art it would be obvious to one skilled therein to employ appellant's second reactants is not convincing to us.

We do not consider the principle laid down in In re Wietzel et al., 39 F.2d 669, 672, 17 C.C.P.A., Patents, 1079, and other cases cited by the solicitor in his brief to be applicable here. In that case we cited with approval the language of the Board of Appeals as follows:

"And, where there is no real reason to suppose that the result would not be produced there is no invention in trying it and finding out that the process is successful."

On the record here there was every reason to suppose that the result reached by appellant would not be successful in view of the admitted fact that the reaction of free chlorine with gaseous hydrocarbons is difficult to control and frequently results in violent explosions, or in the production of undesirable products. It is stated in appellant's specification that one of the ob-

jects of his invention is to provide a safe and effective process for the production of alkyl chlorides and, therefore, the process by which such chlorides are invariably produced, in our opinion, should be held to possess an effective influence in controlling the above-mentioned undesirable results.

We have examined the cases cited in the briefs, but feel that a discussion of them would add nothing but length to this opinion.

For the reasons herein set forth, the decision of the Board of Appeals is reversed.

Reversed.