53 CCPA

**Application of Frederick A. HESSEL.**
**Patent Appeal No. 7465.**

United States Court of Customs and Patent Appeals.
Dec. 9, 1965.

George Larue Tone, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 1 and 2 in appellant's application [1] for "Secondary Recovery Method."

It appears that economical recovery of oil from oil-bearing sands by natural flow or usual pumping methods is often hindered by (1) a decrease in the natural gas pressure in the oil formation which drives the oil toward the well, and (2) absorption of certain residual amounts of oil upon the sand particles. To obviate that problem the prior art has employed water flooding techniques in which water is introduced through certain wells into the oil sand. The flow of water drives further quantities of oil toward other wells from which it may be recovered. That technique itself is not without difficulty, however, since water employed in that manner tends to "finger" and bypass substantial portions of an oil reservoir. Thickening agents, including natural and synthetic polymers, have been added to the water to increase its viscosity relative to the oil in order to overcome reservoir bypassing. Appellant's proposed solution to the problem is reflected in claim 1:

1. In the secondary recovery of petroleum from underground formation by the water flooding method, the method of increasing recovery of petroleum which comprises incorporating into the flood water injected through an input well into said formation the sodium salt of the copolymer of methyl vinyl ether and maleic anhydride and having the general formula wherein n repre-

sents an average integer of from about 5 to 2000 in a small amount sufficient to increase the viscosity of the water from about 1–5 centipoises.

The sole issue before us is whether the differences between the subject matter sought to be patented and the prior art, represented by the Beeson [2] and von Engelhardt [3] patents, are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. The examiner and board held affirmatively.

As an introduction to his invention in the secondary oil recovery art, Beeson discloses the following pertinent information:

\* \* \* several procedures have been suggested to date for improving the mechanics of water-flooding procedures, particularly with a view to reducing the degree of fingering and bypassing. \* \* \*

*It has also been suggested to employ aqueous solutions of certain synthetic polymers such as the co-*

[1]. Serial No. 11,971, filed March 1, 1960.

[2]. U.S. Patent No. 2,771,138 issued November 20, 1956.

[3]. U.S. Patent No. 2,842,492, issued July 8, 1958.

*polymers of methyl vinyl ether and maleic anhydride,* the condensation products of fatty acids and hydroxyamines, sodium polyacrylate, polyacrylic acid, sodium polymethacrylate, etc. All of these solutions are characterized by viscosities that are greater than that of water and accordingly would be more attractive than water as flooding media. With regard to these types of.aqueous solutions, however, it has been observed that their viscosities are greatly decreased when they come in contact with brines such as are customarily present within oil reservoirs. Apparently, the electrolytes that are present within the brines in some way destroy the cross-linkages or other viscosity contributing characteristics that the polymers possess with the result that the viscosity of a solution containing them is markedly decreased. [Emphasis supplied]

The von Engelhardt patent also relates to the secondary oil recovery art. To increase the amount of oil recovered, von Engelhardt proposes to flood oil deposits with water containing a "viscosity improver" selected from copolymers of an ethylenically unsaturated carboxylic acid, such as maleic acid, and an ethylenically unsaturated noncarboxylic compound, such as styrene, acrylonitrile or various vinyl esters. He discloses that the copolymers may be employed in either the free acid or the sodium salt form.

The board succinctly summarized the examiner's position in the following manner, and expressed its agreement therewith:

The appealed claims require the use of the copolymers in the form of their sodium salts. Beeson does not disclose that the copolymer of methyl vinyl ether and maleic anhydride was used in the form of its sodium salt. The stated position

of the Examiner is that it would be obvious to those skilled in the art, from consideration of the Von Engelhardt et al. patent, that the sodium salt form of the copolymer could be used.

Appellant urges here, as below, that Beeson "leads away" from the claimed subject matter, since it indicates, in appellant's words, "that the copolymer of methyl vinyl ether and maleic anhydride was unsatisfactory" for use in water flooding methods of secondary oil recovery. He cites three decisions[4] of this court to support his position that a teaching in a patent that certain procedure was not completely effective or satisfactory may have a hearing on the pertinency of the patent as a reference.

In answer to those arguments, the board stated:

* * * In this connection two points merit consideration. First, the Beeson patent does not state that an aqueous solution of the copolymer of methyl vinyl ether and maleic anhydride was completely unsatisfactory or ineffective. On the contrary, the patent states that such solution is characterized by a viscosity greater than that of water and would be more attractive than water as a flooding medium. The admission is made by the patentee that the viscosity of such a solution is greatly decreased when it comes into contact with brine. There is no statement, however, that the solution is completely ineffective even after contacting with brine. The second point is that the reasoning involved in the decisions cited by the appellant appears not to be favored in a later expression of opinion by the Court on a similar question. We refer to In re Nehrenberg, 47 CCPA 1159; 126 USPQ 383; * * * 280 F.2d 161; * * *.

4. In re Sutton et al., 211 F.2d 582, 41 CCPA 816; In re Hampel, 164 F.2d 359, 35 CCPA 744; In re Milne, 140 F.2d 1003, 31 CCPA 918.

We agree with the first "point"[5] set forth by the board. It seems to us that Beeson can be fairly construed as teaching that the use of a copolymer of methyl vinyl ether and maleic anhydride is not new in the secondary oil recovery art. Beeson simply relates that the copolymer possesses disadvantages when compared to the particular subject matter of Beeson's invention. It appears evident that an aqueous solution of the copolymer retains a viscosity greater than that of water when contacted by brine, and would be more advantageous than water alone when used in secondary oil recovery.

The question remains as to what is realistically taught by the Beeson and von Engelhardt references. We think the reference combination provides adequate facts from which we can conclude that the use of the sodium salt of the copolymer of methyl vinyl ether and maleic anhydride would be obvious to one of ordinary skill, and that it would be expected that the sodium salt, if nothing else, would at least be as effective as the free acid form when used in water flooding procedures. Appellant has adduced no evidence in the record to the contrary. Indeed, his specification states that "many inorganic salts even in large amounts do not materially effect [affect] the amount of * * * [the copolymer of methyl vinyl ether and maleic anhydride], or its salt, necessary to effect the desired increase in the viscosity of water * * *." Under the circumstances, we do not think the reference combination can properly be said to "lead away" from the claimed subject matter.

Our review of the record, with due regard for appellant's arguments, satisfies us that the board committed no reversible error.

The decision is affirmed.

Affirmed.

MARTIN, J., took no part in the consideration or decision of this case.

53 CCPA

---

5. As for the second "point" of the board, we do not agree that In re Nehrenberg or, for that matter, In re Watanabe, 315 F.2d 924, 50 CCPA 1175, may be read to *disfavor* the reasoning of the cases cited by appellant. Rather, the prior art in Nehrenberg and Watanabe was found to suggest what appellants there had done although the particular procedures disclosed were not suitable for the reference's purpose. On the whole, however, we think the factual situations and reasoning employed in Nehrenberg and Watanabe are akin and apropos to the circumstances here.