56 CCPA

**Application of Noel F. HAMILTON.**
**Patent Appeal No. 8069.**

United States Court of Customs
and Patent Appeals.

Jan. 9, 1969.

Fay, Sharpe & Mulholland, Thomas D. Shaffner, Cleveland, Ohio, for appellant.

Joseph Schimmel, Washington, D. C. (Joseph Nakamura, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals af-firming the rejection of claims 1, 2 and 3, the only claims in appellant's application entitled "Method of Detecting Leaks and a Composition Therefor." [1]

The invention resides in a method of detecting leaks in pressurized fluid systems and specifically in applying to the area to be tested a foam-forming composition of a particular sulfonate in specific concentrations in distilled water. The majority of liquid and gas line systems are checked for leaks that may exist due to faulty joints or the like. Appellant proposes to conduct these checks by applying a film of the leak detecting composition of the invention over the area of suspected leaking. Detection of leaks, if they exist, is rendered possible by the formation of small bubbles, or foaming due to the escaping gas. This bubbling action or foaming is initiated by the smallest seepage of gas and will continue over a long period of time, permitting visual location of the leak.

The present invention provides a composition which allegedly avoids the use of expensive and bulky materials previously used in detecting leaks. The liquid composition used here is noncorrosive to metal, dries clean and leaves no stains or residue on which dust would ordinarily collect.

Claim 1 is illustrative:

1. A method of detecting gas leaks which comprises applying effective amounts of a foam-forming composition over the outer area of the suspected leak, said composition consisting essentially of distilled water and from about 0.1 to 1.2 per cent by weight of a sulfonate characterized by the formula $R_1-SO_3M$ in said water, wherein $R_1$ in [sic] an organic radical having 5 to 22 carbon atoms per molecule and being selected from the group consisting of alkyl, aryl, aralkyl, and alkyl aryl radicals, and M is a metal selected from the group consisting of alkali and alkaline earth metals.

1. Serial No. 394,353 filed September 3, 1964.

Claims 2 and 3, also method claims, are narrower than claim 1 in that they are restricted to the preferred alkyl aryl sulfonates and claim 2 further limits the concentration range to 0.5 to 1.0 per cent while claim 3 recites a concentration of approximately 0.6 per cent. The proportions of the sulfonate are disclosed as being critical only in that less than 0.1 per cent of sulfonate failed to lower the surface tension of the water and thus failed to make the water sensitive to foaming while concentrations higher than 1.2 per cent failed to go into solution and consequently were precipitated. The references relied upon are:

| La Vietes | 2,469,045 | May 3, 1949 |
| Potter | 2,665,257 | January 5, 1954 |

"Water", National Association Institute of Dyeing and Cleaning, Inc., Silver Spring, Md., Bulletin Service No. 147, April 11, 1944.

———◆———

Potter discloses a method of detecting gas leaks by applying a bubble-forming composition on the surface of parts to be tested. The bubble-forming composition is a liquid prepared by adding 2 oz. of a mixture of solid ingredients to a gallon of water. The mixture of solid ingredients comprises as a major ingredient a sodium alkyl aryl sulfonate, the active constituent of which is dodecyl benzene sodium sulfonate, to which is added, in varying proportions, a mixture of alkyl sulfonate or a sulfated alcohol such as lauryl sodium sulfate and sodium benzoate or magnesium carbonate; defatted soy bean flour; sodium carboxymethylcellulose; and sodium sulfite. Whether or not the water is chemically pure is disclosed as being substantially immaterial and the use of hard or soft water, as well as sea water, is taught.

The patentee states that when water is added, some undetermined chemical reaction "is believed to occur although its nature has not been precisely determined," and that the resulting liquid "forms larger and more persistent bubbles, forms them more readily and they separate more readily from the surface on which they are formed as compared with * * * solutions of any of the said ingredients individually * * *."

La Vietes discloses the use of sodium alkyl aryl sulfonate as the wetting agent in a bubble-forming composition. The composition consists of a solution of a wetting agent in water containing a water-soluble gum. The wetting agent is disclosed as having the function of producing the bubbles in cooperation with the water while the gum is the material which provides a desired parachute effect formed upon collapse of the bubble in order to permit it to settle downwardly relatively slowly.

The "Water" bulletin discloses that suds form more easily and with less soap with soft water than with hard water and that the former is obtainable from the latter by distillation.

The examiner rejected the claims as being obvious over Potter in view of La Vietes and the "Water" article under 35 U.S.C. § 103. The basis of the rejection was stated as follows:

Potter discloses a leak detecting composition and method of use. The composition contains water (can be soft) and an alkyl aryl sulfonate and detects leaks by foaming. La Vietes patent discloses a foam producing composition. The composition employed is an alkyl aryl sulfonate as the foam producing ingredient. It would not involve invention to use the composition of La Vietes in the leak detecting method disclosed by Potter. The use of distilled water in the instant composition is of no patentable moment since it is known that foams form easier and in larger quantities when softer water is used.

The board affirmed the rejection and responded to appellant's arguments as to the possibility of a chemical reaction occurring in Potter by stating that "[We] do not find that this disclosure renders unobvious the employment of the simpler water-sulfonate bubble forming materials known to the art for this purpose." The board agreed with the examiner's position as to the claimed use of distilled water and further pointed out disclosure in the Potter patent that "substantially meets appellant's contribution," and stated that the Potter patent, "if it does not fully meet appellant's claims (35 USC 102), clearly renders obvious the claimed composition in the disclosure * * * that solutions of any of the ingredients *individually* can be used in the disclosed process * * *."

Appellant requested reconsideration of the question of obviousness and submitted an affidavit to show commercial success of the product used in the claimed method. The board denied the request and refused to consider the affidavit on the ground that it was not timely presented.

Appellant takes the position that the rejections amount to hindsight reconstruction of the prior art without any factual basis therefor, except his own disclosures, and further that the prior art involved actually teaches against the proposed modification.

The Potter reference, appellant contends, with its disclosure of an aqueous six-constituent, multi-phase, apparently reactive, heterogeneous suspension, which contains a bubble-forming material, fails to teach appellant's single phase unreactive homogenous solution consisting essentially of a specific concentration of a certain foam-forming material in distilled water. Potter, it is argued, teaches that each of his constituents is necessary and that they undergo a reaction and further that it is substantially immaterial whether or not the water employed is chemically pure.

Appellant submits that La Vietes and the "Water" article may not properly be substituted into the modified method of

Potter since La Vietes is directed merely to a bubble-forming composition, used as a toy, which contains ingredients in addition to alkyl aryl sulfonate and the "Water" article describes soft water only, not pure water.

■ We cannot accept appellant's argument. All of the disclosures in a reference must be evaluated for what they fairly teach one of ordinary skill in the art. In re Boe, 355 F.2d 961, 53 CCPA 1079. See also In re Hessel, 353 F.2d 244, 53 CCPA 756. Since Potter points out that large, persistent and readily detachable bubbles are required for his purpose, it seems to us that the reference can be fairly construed as teaching that when such an advantage is not desired "solutions of any of the said ingredients individually" would be adequate for the purpose of detecting leaks and the multi-ingredient composition of Potter would not be required. The alkyl aryl sulfonate, dodecyl benzene sodium sulfonate, it is noted, is a major ingredient in Potter's composition. While La Vietes adds a gum to the composition to obtain a particular bubble effect, the teaching that a solution of wetting agent such as sodium alkyl aryl sulfonate and water alone will form bubbles is clear. We agree with the board that, in view of these teachings, "it would be quite obvious in the Potter method to employ a simplified bubble forming composition where the additional properties are not required."

Appellant further argues that the use of distilled water would not be obvious. We have reviewed the Potter and "Water" references and find therein disclosed sufficient teaching to make one skilled in the art aware of the fact that distilled water is preferable for effective formation of bubbles.

■ Finally, appellant urges that the board erred in refusing to consider commercial success as demonstrated by the affidavit. We note that no reason of appeal specifically raises the issue nor has clear error on the part of the board been shown. Since the affidavit was not considered by the board, it will not be

considered here. In re Pantzer, 341 F.2d 121, 52 CCPA 1135.

We have considered appellant's arguments and the cases cited in support thereof, however we are not convinced that the rejection of claims 1–3 as unpatentable over Potter in view of La Vietes and the "Water" articles is in error. The view we take renders it unnecessary to consider the board's discussion of Potter alone.

The decision is affirmed.

Affirmed.

BALDWIN, J., took no part in the consideration or decision of this case.