53 CCPA

**Application of Hans Theodor BOE.**

**Patent Appeal No. 7535.**

United States Court of Customs and Patent Appeals.

Feb. 17, 1966.

Burgess, Dinklage & Sprung, Arnold Sprung, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

The Board of Appeals affirmed the examiner's rejection of claims 9, 11 and 12 of appellant's application for patent Serial No. 845,743, filed August 12, 1959, for "Highly Porous And Absorptive Non-Woven Fabrics And Method of Making Same."

The appealed claims are directed to a method of manufacturing highly porous absorptive non-woven materials in the nature of chamois leather. Such materials have good water retention as well as absorptive properties. As pointed out in the specification:

> If these non-woven fabrics are being used as chamois leather they must not only be characterized by a high porosity but also by a high water retention power. The chamois leather must fullfill [sic] two re-requirements, firstly, to take away remnant water from the window pane and secondly to retain this water under pressure. A sponge for example is not suited for aftercleaning and drying a window since the water retention capacity is poor.
> \* \* \*

Claim 9, upon which claims 11 and 12 depend, defines the method as follows:

> In a method of manufacturing highly porous absorptive non-woven materials having outstanding water-retention characteristics, the steps of:
>
> 1.) impregnating a loose fiber web of cardable textile fibers with an aqueous latex foam containing 40–200 parts by weight of a pore-former selected from the group consisting of urea, thiourea, dicyandiamide, and hexamethylene tetramine, per 100 parts by weight of latex solids,
>
> 2.) re-impregnating the resulting web with substantially the same aqueous latex foam in the form of a paste,
>
> 3.) drying the twice-impregnated web, and
>
> 4.) thereafter washing the web with water to dissolve out the pore-forming agent.

Claim 11 is directed to the method wherein the wash water contains an alkaline agent, and claim 12 the method wherein the web is subjected to an intermediate treatment with a Glauber's salt-solution.

The claims were rejected under 35 USC 103 in view of:

Nottebohm 2,719,795 Oct. 4, 1955
Fernald 2,700,694 Jan. 25, 1955

The claimed method involves impregnating a fiber fleece with an aqueous latex foam containing in addition to a curable bonding agent, 40 to 200 parts by weight of a pore former selected from the group consisting of urea, thiourea, dicyandiamide and hexamethylene tetramine, per 100 parts by weight of latex solids. The thus impregnated material is then dried at a temperature below the curing temperature of the bonding agent. The resulting material is then impregnated with a paste made from substantially the same latex foam, dried again, and vulcanized. After drying and vulcaniza-

tion, the material is washed with water to dissolve out the particles of pore-forming agent, producing a material containing pores in the bonding agent. The sheet material obtained is said to consist of "an open skeleton of intermingled polyposed fine cardable fibers."

The differences between the claimed method and the method disclosed by Nottebohm for making a similar type of material are (1) the point at which the pore-forming materials are initially introduced in the method and (2) the selection of the pore-forming materials from the group consisting of urea, thiourea, dicyandiamide and hexamethylene tetramine.

We shall consider each of these differences separately. It is appellant's position that his introduction of the pore-forming materials in the initial latex foam produces a greater porosity in the finished material than is achieved by the Nottebohm method. To support this position, an affidavit was submitted, together with samples of the finished materials, which clearly establishes the greater porosity of the materials manufactured according to appellant's method. We think it significant, however, that no tests are reported and no assertion is made as to the relative tensile strengths of the materials. We think it clear from the Nottebohm patent that the art had used pore-forming materials in what Nottebohm refers to as the "prestabilization of the fleeces." This step corresponds generally to what in appellant's method is the first impregnation step. Nottebohm in discussing this knowledge of the art states:

> It has been found that the latices to be used for the prestabilization of the fleeces should be substantially free of fillers, such as starches or water soluble salts, which can subsequently be washed out to form micropores, because the presence of such fillers, on the one hand, increases the viscosity of the latices to such an extent that it becomes practically impossible to produce a stable foam or to obtain in any other manner a sat-

isfactory impregnation of unstabilized fleeces, while, on the other hand, binder particles deposited from binder liquids containing such fillers exhibit, after washing out of the pore formers, insufficient mechanical strength to effect by themselves a reliable and uniform stabilization of the fleeces.

It seems to us that the foregoing statement in Nottebohm indicates what one of ordinary skill in this art was expected to know, namely, that the pore-forming materials can be added with the latice-forming materials in the prestabilization of the fleeces but that such addition is subject to two problems, i. e., (1) the stability of the foam and it satisfactory impregnation of the fleece and (2) the "insufficient mechanical strength to effect by themselves a reliable and uniform stabilization of the fleeces." Appellant does not disclose how his method overcomes the problems stated by Nottebohm except by the suggestion in his specification that:

> It is known to produce highly absorptive porous non-woven sheet materials, so-called non-woven fabrics, by impregnating a batt of cardable, preferably polyposed fibers with an aqueous dispersion or emulsion of a bonding agent, such as natural or synthetic rubber, thermoplastic resins or the like, and hardening or curing said bonding agents.

> It is further known to increase the porosity of said non-woven fabrics by incorporating into said emulsion or dispersion a water soluble salt, such as Glauber's salt. Since these water soluble salts cause a coagulation of the latex, stabilizers, such as starch must be added. After curing of the bonding agent, the resulting non-woven fabric is subjected to the action of warm or hot water, thereby dissolving the water soluble salts and the stabilizer with the formation of pores within the cured bonding agent.

> Although the porosity of the non-woven fabric may thus be increased,

said method is disadvantageous since the sharp edge crystals of the inorganic salts may cause mechanical damage to the fine delicate fibrous gauze. It is furthermore difficult to remove the sparingly soluble stabilizer, such as starch.

While Nottebohm does disclose pore-forming materials which might have the disabilities to which appellant refers, it is clear that Nottebohm's teachings are not so limited. Thus Nottebohm states:

The latices which may be used for the reinforcing paste impregnation are vulcanizable latices of the same type as those used for the prestabilization, but they contain, in addition to about 8% to about 20% by weight of vulcanizable binder solids per 100 parts by weight of binder solids, between about 100 parts and 275 parts by weight of a filler or pore-forming agent, which in the final impregnation is preferably selected from the group consisting of the water soluble and water solubilizable high molecular organic substances and mixtures of such organic substances with not more than about twice their weight of water soluble alkali metal salts. The term "water solubilizable" is used in the present specification and claims to designate such high molecular organic substances which can be easily converted from a less water soluble form to a more water soluble form, for instance, by an after-treatment with enzymes.

Nottebohm also discloses a variant on the process which appellant does not appear to have used in the comparative tests as reported in the Boe affidavit. Thus Nottebohm states:

The water absorbent properties of the sheet material obtainable according to the process described heretofore may be further improved, according to a preferred embodiment of my invention, by subjecting the prestabilized sheet material, prior to the paste impregnation thereof, to an intermediate treatment which comprises applying to the prestabilized material an aqueous solution of a pore-forming agent capable of forming, on drying, relatively large water soluble deposits, and then drying the material. Solutions of alkali metal salts, such as Glauber's salt or sodium chloride, and of organic water soluble substances, such as polyvinyl alcohol or sugar solutions, have been found to be useful for this purpose.

It seems to us, therefore, that one of ordinary skill in this art, at the time of appellant's invention, would know from the Nottebohm reference (1) that the pore formers could be introduced into the process prior to Nottebohm's final impregnation step, (2) that by so doing the porosity of the material, referred to by Nottebohm as "the water absorbent properties" may be further improved by adding an aqueous solution of pore-forming materials to the prestabilized material before the paste impregnation, and (3) that the pore forming material could be "organic water soluble substances."

While appellant's affidavit describes tests of certain of Nottebohm's disclosures it does not describe a test nor compare the products resulting from Nottebohm's modified process. For all the present record shows, it may be that appellant is satisfied to sacrifice some mechanical strength in his end product in order to secure additional porosity (measured by appellant in terms of water absorption). The examiner in his answer stated:

* * * Appellant has not shown that his product is not lower in mechanical strength as a result of impregnation with a filler in the latex dispersion.

The board stated:

* * * We agree with the Examiner that the addition of pore formers according to the non-preferred disclosure of Nottebohm and acceptance of the mentioned disadvantages does not properly constitute grounds for patentability over the reference. The record before us lacks evidence

of pore former influence on mechanical strength. Manifestly, however, increased porosity should result in loss of strength.

■■ All of the disclosures in a reference must be evaluated for what they fairly teach one of ordinary skill in the art. Thus, in In re Smith, 148 F.2d 351, 32 CCPA 959; in In re Nehrenberg, 280 F.2d 161, 47 CCPA 1159; and in In re Watanabe, 315 F.2d 924, 50 CCPA 1175, this court affirmed rejections based on art which we concluded rendered the claimed invention obvious to those of ordinary skill in the art despite the fact that the art teachings relied upon in all three cases were phrased in terms of a non-preferred embodiment or as being unsatisfactory for the intended purpose.

We therefore agree with the board and the examiner that:

* * * the addition of pore formers according to the non-preferred disclosure of Nottebohm and acceptance of the mentioned disadvantages does not properly constitute grounds for patentability.

We pass now to appellant's argument that it was not obvious to select his pore-forming materials from the class of materials recited in the appealed claims. The board summarized the Fernald teaching as follows:

Fernald relates to the production of porous separators for batteries in which he uses water soluble pore forming agents in a sheeted composition, the preferred substances being sugar, urea, and inorganic salts.

It concluded, as we do, that:

We find ourselves in agreement with the Examiner that it would be obvious to select urea as the organic water soluble pore forming substance in the process of Nottebohm from a consideration of Fernald.

The "Summary" in the examiner's answer states our views and is here incorporated. The examiner stated:

Appellant bases his arguments for patentability on the new and unexpected results from the use of particular pore formers mixed with a resin latex and applied as the first impregnating layer to a fibrous batt whereas (1) applicant's disclosure teaches a first impregnation without pore formers as shown in the Nottebohm reference; (2) The Nottebohm reference teaches a loss. in mechanical strength with particular pore formers causing increased viscosity and applicant has shown no evidence of pore former influence on mechanical strength. If the loss of mechanical strength is accepted, increased porosity is obvious; and (3) the Fernald reference teaches the equivalence of the pore forming materials used.

It seems clear to us that despite the lateness of its filing, the Boe affidavit on which appellant relies was given every appropriate consideration. Increased porosity with a corresponding increased water retention and loss of mechanical strength is taught by the prior art and is not a new and unexpected result. The affidavit does not show increased water retention without the expected corresponding loss of mechanical strength. We agree with the board that appellant's affidavit is not conclusive because it is not responsive to the issue which was clearly raised by the examiner.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.