53 CCPA

### Application of Richard F. SHANNON.
### Patent Appeal No. 7534.

United States Court of Customs
and Patent Appeals.

Feb. 17, 1966.

———◆———

Herman I. Hersh, Chicago, Ill. (James H. Littlepage, Washington, D.C., of counsel), for appellant.

Clarence W. Moore, Washington, D.C. (Fred W. Sherling, Washington, D.C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from a decision by the Board of Appeals concerning product claims 1, 2, 4, 5, 9 and 10, all the claims in application serial No. 705,494, filed December 27, 1957, for "Bonded Glass Fiber Structures and Materials." The issue presented by the appeal is whether the board's affirmance of the rejection of those claims as obvious in view of certain prior art, 35 U.S.C. § 103, is proper.

The invention relates to glass fiber structures in which the glass fibers are bonded to one another in the structure by a synthetic resinous material. The beneficial properties of glass fibers are well known, and include high strength and flexibility. The fibers are also inert, non-flammable, and rot and heat resistant. Cloth of such fibers is useful in making boat hulls or auto bodies, and fibers in the form of glass wool or discontinuous interfelted arrangements are useful in electrical and thermal insulation, pipe wrap or roof decking, all of which structures employ a thermosetting resinous material to bond the fibers in a permanent form. Such resinous materials commonly are the phenol, urea, or melamine formaldehyde, or polyester resins. Appellant notes in his brief on appeal that "such resins are referred to generally in the trade as resins of the thermosetting type which polymerize by condensation between hydroxy, amino and carboxyl groups."

The problem appellant faced is generated by the fact that the glass fibers are fine, solid, rod-like members having smooth surfaces. As a result, and in contrast to both natural organic fibers which are porous in character with fibrillae extending from the surfaces and synthetic fibers of a resinous character, the glass fibers present little or no surfaces by means of which a mechanical bond or grip can be formed with the resin. Further, glass fibers are hydrophilic. In the presence of high humidity or moisture a water film forms thereon, even when coated with a resin, thus dissipating the bonded relationship between resin and glass fiber. As a result, structures of bonded fibers exhibit a poor parting strength and excessive swelling.

Appellant combines gamma-aminopropyltriethoxy silane with curable resinous materials, such as those mentioned above, to form a mix which is applied to glass fibers as a single-layer adhesive

coating. Claims 1 and 9 are representative:

1. Glass fibers and a single adhesive coating on the surfaces of the glass fibers comprising a condensation polymer selected from the group consisting of a hydroxy, amino, and carboxyl condensation resin and gamma-amino propyl triethoxy silane present in an amount within the range of 0.02 to 2.0 percent by weight of the coating.

9. A bonded glass fiber structure comprising glass fibers in an interfelted arrangement and a binder securing the fibers one to another in which the binder comprises a thermosetting resinous base selected from the group consisting of a hydroxy, amino, and carboxyl condensation resin and contains 0.02 to 2.0% by weight of gamma-amino propyl triethoxy silane.

Of the remaining dependent claims, numbers 2 and 10 are specific to phenol formaldehyde as the condensation resin, 4 is specific to urea formaldehyde, and 5 to melamine formaldehyde resin.

It appears from appellant's specification that an adhesive mix of the gamma-aminopropyltriethoxy silane with phenol formaldehyde resin, used to bond a uniform test "board" of glass fiber structure, exhibits less than one-fourth the swelling of mixes using other organo silicon compounds, and one-eighth that exhibited by a control board bonded with a resin having no organo silicon additive. Similarly, as compared to a previously prepared siloxane, "Dow XEF–165 (emulsified methyl hydrogen siloxane)," the parting strength of the invention mix was 33% higher when dry and 75% higher after humidity "conditioning" for 120 hours at 120° F. and 100% relative humidity. Thus the superiority of the invention mix is undisputedly established over that of other mixtures disclosed in the specification.

The rejection is based on two references:

Vasileff et al.  2,541,896  Feb. 13, 1951
Jex et al.       2,832,754  April 29, 1958

Jex et al. (Jex) discloses products formed by successively treating (sizing) a heat-cleaned glass cloth with a 1.2% water solution of gamma-aminopropyltriethoxy silane, drying the glass cloth, and then laminating layers of the sized glass cloth with a melamine-aldehyde resin, and finally curing the laminate. These laminates were tested for flexural strength according to a standard test [1] with the following results:

Table 5

FLEXURAL STRENGTH

|  | Dry, p. s. i. | Wet, p. s. i. | Percent Retention |
|---|---|---|---|
| Non-sized glass cloth laminate | 24,400 | 13,800 | 56.5 |
| Sized glass cloth laminate (treated with solution of triethoxysilylpropylamine).[2] | 80,000 | 76,500 | 95.8 |

[1.] The test is disclosed by Jex as described in "Air Force Specification MILP–8013 (also Federal Specification LP–406a Method No. 1031)."

[2.] "Triethoxysilylpropylamine" is the same as gamma-aminopropyltriethoxy silane.

Beside the superiority in those properties, Jex also notes that the gamma-amino*propyl*triethoxy silane of his invention possesses "new and unexpected properties as compared with the known triethoxysilyl*methyl*amines * * *." (Emphasis ours.) The Jex reference is not limited to melamine-aldehyde resin alone since it teaches generally that:

> * * * We have found that reinforced plastics, such as laminates, prepared from fibrous glass materials and those thermosetting resins which comprise the aldehyde condensation resins, the epoxy resins and the urethane resins, having a superior glass to resin bond are produced by subjecting the fibrous glass materials, prior to lamination, to a treatment with a compound within the scope of this invention.

Vasileff et al. (Vasileff) was concerned with the problem of counteracting the adverse effect which residual methylol groups in aldehyde type condensation resins have on the electrical properties of the cured resins, particularly on exposure to moisture. Phenol, urea and melamine formaldehyde type resins are specifically disclosed as resins for glass fiber molding compositions and molded articles. Vasileff states that:

> * * * *by adding to aldehyde type condensation resins an organosilane compound* containing at least one hydroxyl group attached to the silicon, or a group readily convertible thereto by hydrolysis such as, halogen, amino and ester groups, the stability of the electrical properties of molded articles made therefrom is greatly improved. * * * [Emphasis ours.]

Thus, Vasileff mixes organo silane compounds, such as di-tertiarybutoxy-diaminosilane, di-tertiarybutoxysilanediol, diphenylsilanediol and tetraethyl orthosilicate, with aldehyde type resins to make an impregnating solution used in laminating pyrolized glass cloth. The impregnating resin solution or mix "may be blended with various fillers such as wood flour, mica, glass fibers, glass cloth, and the like."

The claims were rejected by the examiner as "unpatentable over Jex et al. taken alone or Vasileff et al. in view of Jex et al." While the gist of the board's view was that:

> * * * It is considered that combining the components would be an obvious modification in view of Jex et al. who disclose the identical components each employed for a similar purpose * * *[,]

it is our view that the combination rejection of the examiner is sound, thus making it unnecessary to consider the rejection based on Jex alone.[3]

It is clear that Jex produces his bonded glass fiber (cloth) products by a two-step process, first the silane then the resin, as distinct from appellant's one-step process using the mix. That difference in process, however, is not conclusive of patentability with regard to the end products, and appellant has offered no evidence to show that his product is substantially different from that of Jex.

We note here that the tests in the specification were comparisons with resins containing either no additives or those containing other siloxanes, silicone oils, or silicons. No comparison with a product produced by a two-step process was

---

3. Although the board did not elaborate on the examiner's position, it clearly did affirm the combination rejection, stating:
   The rejection of the appealed claims on Vasileff et al, in view of Jex et al. is considered at best to be merely cumulative to the rejection based on Jex et al. alone and is not deemed to warrant a detailed discussion.

For these reasons and those set forth in the Examiner's Answer, we conclude that the appealed claims are unpatentable over the prior art applied. That affirmance of the combination rejection was made a reason of appeal and has been briefed and argued by appellant here.

made. In fact, the specification is silent on the prior methods of use of "previously preferred Dow 165 * * *," and of use "of the large group of different types of organo silicon compounds which have been tried as agents to facilitate the bonding relationship between resinous materials and glass fibers * *." The specification also notes, similarly unspecifically:

> To the present, one of the better solutions to this problem of deriving greater utilization of the high strength properties of glass fibers when employed as a reinforcement with resinous materials in the manufacture of reinforced plastics and coated fabrics, has comprised the use of an anchoring agent in the form of an organo silicon compound or a Werner complex compound * * *.

Thus, the thrust of appellant's invention was the discovery of the comparative benefits of the gamma-aminopropyltriethoxy silane in a resin mixture as compared to other types of organo silicon compounds in a mixture with a resin, and differences in the final products as compared to the products of the Jex two-step process appear on this record to be at best arguable. As this court noted in a similar situation in In re Mostovych, 339 F.2d 455, 52 CCPA 884, "[a]n arguable difference is not convincing at the precise point where comparative evidence is clearly needed." See In re Boe, [PA 7535] 355 F.2d 961, 53 CCPA ——.

In our view, Vasileff supplies the concept of the combination of an organo silicon compound, although of a different structure, with the resins used both by Jex and appellant as a mix for bonding glass fibers. Thus, we think that one of ordinary skill in this art, upon viewing the two references, would find the invention as a whole obvious.

Appellant argues that the organo silanes of Jex are entirely different from those of Vasileff from the standpoint of structure, characteristics and reactivity. The fault in that argument is that it is directed to the rejection as involving the substitution of the Jex organo silane for that in Vasileff. But as we view it, the rejection is not based on such a substitution. One of ordinary skill in this art would know from Vasileff that products having a single coating of resin mixed with silane were a common alternative to the products produced by two steps as in Jex. There are only two reasonable suggestions to be gained from Vasileff: To use his hydroxy silane in a two-step Jex process, or to mix the Jex gamma-amino silane with the commonly used resins. Vasileff does not so teach the particular hydroxy silane to be an absolute requirement of his mix as to negate the general teaching of resin plus silane in combination. Thus, the concept of the combination is fairly contained in Vasileff and would suggest the claimed modification of Jex to one of ordinary skill in the art. In re Bascom, 230 F.2d 612, 43 CCPA 837, 841.

We recognized in In re Biefeld, 285 F.2d 826, 48 CCPA 795, that a patentable distinction existed between separate coatings of a treating material and an impregnant, and a single thin film size coating of the two in combination. Even a cursory reading of that case will indicate that the facts there do not permit our determination there to be raised to a rule of law governing the factual situation here. In In re Lainson, 339 F.2d 252, 52 CCPA 880, this court stated, in response to a similar reliance on prior cases, that:

> * * * The question of obviousness, however, is so closely tied to the facts of each particular case that prior decisions in cases involving different facts are ordinarily of little value in reaching a decision.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.