53 CCPA
**Application of Christopher L. WILSON and Don G. HUTTON.**

**Patent Appeal No. 7561.**

United States Court of Customs and Patent Appeals.

May 5, 1966.

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

Martin, J., dissented in part.

Morris Kirschstein, New York City, Robert I. Dennison, Washington, D. C., Richard K. Parsell, New York City, Solon B. Kemon, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Lutrelle F. Parker, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 6, 8 and 14–17 in appellants' patent application [1] entitled "Apparatus for Making Foams" as being "unpatentable over the prior art."

1. Serial No. 80,712, filed September 15, 1960. The disclosure of the application is identical to the disclosure of appellants' application which is involved in another appeal to this court, In re Hutton et al., 356 F.2d 111, 53 CCPA ——.

The application relates to apparatus designed to effect rapid mixing of reactive liquid chemicals. After mixing, the partially reacted liquid (which may consist of a polyester, a diisocyanate and an aqueous amine catalyst) is ejected from the apparatus into a suitable mold, where further reaction between the chemicals causes foaming and curing of the material to form, for example, a porous solid polyurethane product. Appellants' apparatus is best understood with reference to Figure 2 of their application drawings:

FIG. 2

Claim 6, to which we have added reference numerals corresponding to the above drawing, adequately describes the apparatus:

Apparatus for mixing a plurality of liquid chemical reactants adapted to react to form a foamed product, comprising a single chambered hollow mixing head [10] having a plurality of closely spaced inlets [11, 12, 13] for respectively admitting said reactants to said head, rotatable paddle means [33] including edge portions within said head and stationary baffle means [35] within said head having edge portions in opposed, closely spaced relation to the edge portions of said paddle means whereby to effect a mechanical shearing action on said reactants, and an outlet [21] from said head for ejecting the mixture of reactants.

Claim 8 differs from claim 6 primarily in adding the limitation that the mixing head is cylindrical. Claim 14 differs from claim 6 primarily in further requiring "means [three metering pumps shown in another drawing] for delivering said liquid chemical reactants respectively to said inlets at pressures not greater than 60 pounds per square inch." Claim 15 makes no mention of any "stationary baffle means" and requires "means" for delivery of the liquid reactants to the inlets at pressures less than 300 pounds per square inch. Claim 16 includes most of the limitations of claim 14, and further requires that the rotatable mixing means and stationary baffle means within the head present "flat" surfaces. Claim 17, dependent from claim 16, recites the presence of valve 32 in the outlet to maintain pressure in the head not greater than 15 pounds per square inch.

The reference is:

Miner    2,706,108    April 12, 1955

458

Miner relates to an apparatus for blending latex foam from a preformed froth and rubber latex. The nature of that apparatus is illustrated here:

Miner's blender consists of a series of "stators" 28, 39 and 30, which are blocks of material having circular bowl-like portions 33 hollowed out of the top and/or bottom thereof. The neck 39 of the upper stator has two openings therein to receive the froth and latex. Disposed within the mixing head are rotatable, *solid, disc-like* rotors 31 and 32. Upper rotor 32 carries "radial fins" 43 on its upper surface to distribute the latex evenly into the froth. Both the rotors and the stators have smooth surfaced, rounded knobs or pins 42 and 35 disposed in concentric circles about the centers of the rotor and bowls, which project "nearly to the chamber walls" and "nearly to" the surfaces of the rotors respectively. The purpose of the pins, having the smooth rounded surfaces, is to provide a "tortuous flow path" and permit gentle interfolding of the latex and foam with little or no turbulent shearing action. The speed at which the blended mixture passes through the mixing head may be varied by controlling the pressure on the froth and the speed of the rotors, with the caution that "the rotors 31, 32 must not be rotated too rapidly, for excessive rotor speeds * * * tend to break up the uniform bubbles of the froth and to shear the latex." The blended mixture leaves the head through pipe 38, said to provide an "unobstructed outlet conduit" for the latex foam, and is deposited in a mold where it gels to form foam rubber.

In sustaining the rejection of the claims on Miner, the board noted that not only does appellants' method differ from that of Miner but also that the particular structure *disclosed* by appellants differs from the prior art. We think that to be self-evident from the drawings and description above. The board was of the view, however, that the claims "are drawn in such broad and general terms that they do not define any significant or unobvious variations over the structure disclosed in Miner." Whether the board erred in that conclusion is the issue brought to this court by appellants' reasons of appeal.

Appellants urge that claims 6, 8 and 14 distinguish over Miner because of the structure recited therein for effecting mechanical shearing action on the reactants. As a mechanical structure limitation, appellants rely on the rotatable paddle or impeller means and stationary baffles being "closely spaced" (claims 6 and 8) or "in operative relation" (claim 14) so as to cause shearing, and they contend that to interpret Miner in a manner which would make his pins [2] perform a shearing action would be to destroy the intended use of the Miner apparatus.

The board noted that Miner desires a gentle blending action, not a shearing action, and went on to point out that whether shear takes place in Miner is not a function of the close spacing of the rotatable mixing means and baffles alone, but also depends upon the nature of the reactants and the speed of rotation of the rotor. As evidence of that, the board referred to Miner's disclosure, above quoted, that operation of his apparatus with excessive rotor speeds [3] tended "to shear the latex." Moreover, the Solicitor points out that the knobs on Miner's stator and rotor are said to project "nearly to" the opposite surfaces. We observe that appellants' specification sheds no light on what is meant by "close-

---

2. The examiner, the board and the Solicitor have apparently proceeded under the assumption that appellants' rotatable paddle means and stationary baffle means correspond to Miner's rounded rotor pins 42 and stator pins 35 respectively. Appellants have not argued that those pins are not *"paddle* means including *edge*

portions" or "stationary baffle means * * * having *edge* portions."

3. We note that appellants disclose use of impeller speeds of 1500–3000 r.p.m. to obtain shearing while Miner uses speeds of 50–500 r.p.m. to achieve blending.

ly spaced" other than mentioning the rotor and baffles have "a relatively small clearance" therebetween. At best, those expressions are relative and cannot serve here to distinguish over Miner. Nor is the fact that shearing is unsatisfactory for Miner's intended purpose significant here, for Miner makes it clear that shearing can be obtained with his spacing and relative speed of rotor and stator. See In re Boe, 355 F.2d 961, 53 CCPA ——, and cases cited therein.

Appellants argue that claims 6, 8, 14 and 15 distinguish over Miner in specifying that the hollow mixing head is "single chambered." According to appellants, Miner shows four chambers.

In answer to a similar argument, we think the board correctly stated:

> As to the physical structure, appellants stress the fact that their mixing head has a single chamber as distinguished from the head of Miner which is described in the Miner patent as having a plurality of chambers. While the term "single chambered" is descriptive of appellants' mixing head, it is also descriptive of the Miner mixing head. Notwithstanding the fact that Miner's head has a series of transversely, inwardly extending members 33, the hollow zones of the head are in communication with *each other* and in a broad sense provide a single chamber. Furthermore, we note that Miner states * * * that the number of mixing chambers "may be increased or decreased." In view thereof if we should give the term "single chambered" a more restricted interpretation, we find no patentability in decreasing the Miner chambers to one.

A chamber is "an enclosed or compartmented space designed for a special purpose"[4] or a "hollow part in a piece of mechanism."[5] Manifestly appellants' chamber, like Miner's, is designed to receive a plurality of liquids, mix them, and dispense them at such a rate that they will not clog therein. Moreover, appellants have presented no convincing reason why Miner's "plurality" of chambers, if they be thought as such, could not be reduced to a single chamber without greatly impairing the blending function of that apparatus, consonant with Miner's suggestion that the number of chambers be "decreased." We do not think the claims distinguish from Miner by reason of their limitation to a single chamber.

Appellants next urge that claim 8 distinguishes over Miner by reciting a "cylindrical mixing head." The examiner was of the view that Miner "has a generally cylindrical chamber with projecting portions around the walls thereof," and the board found the term "insufficient to distinguish from Miner since the Miner head is also cylindrical, albeit not of the same shape as disclosed by appellant."

We agree with appellants that Miner's chamber cannot reasonably be said to be a cylinder in view of the common meaning of that word. See In re Beach, 345 F.2d 209, 52 CCPA 1349. Whether it would be obvious to use a cylindrical shape in an apparatus such as Miner is not before us, as no rejection on that ground was affirmed by the board.

As to claims 14–17, appellants contend they distinguish from Miner in reciting "means for delivering said liquid chemical reactants respectively to said inlets at pressures not greater than" 60 or 300 pounds per square inch. The board thought those limitations related

> * * * to features of the method and do not define any novel characteristics of the means for delivering the liquid which can be distinguished from that of Miner. Furthermore, the pressures as expressed in the claims 'not greater than * * * pounds' do not denote any lower limits and are indistinguish-

---

4. Webster's New International Dictionary, 3rd Edition.

5. Funk and Wagnalls, New Standard Dictionary of the English Language (1931).

able from a low pressure delivery and withdrawal as in Miner.

Appellants point out that Miner says nothing about the values of delivery pressures employed by him. While Miner makes it clear that metering pumps may be used to deliver the latex and froth, we agree with appellants that it is not at all clear from Miner what delivery pressures are contemplated by him. Miner does not support the board's statement that the reference discloses a "low pressure delivery."

Insofar as the board regarded the limitation relative to the inlet pressure [6] to relate to features of the method having little bearing on the patentability of the apparatus claims, we think it erroneously ignored the provisions of 35 U.S.C. § 112, 3rd paragraph, which read:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

We do not find the "means" recited in claims 14–17 to be disclosed by Miner.

In summary, the decision is affirmed as to claim 6 and reversed as to claims 8 and 14–17.

Modified.

MARTIN, Judge (concurring in part and dissenting in part).

I agree with the affirmance of the rejection of claim 6. I do not agree with reversal of claims 8 and 14 through 17. There is certain fundamental knowledge about mixing and delivery which I am convinced anyone in this art would know. It is fundamental geometry that a mixing container can be cylindrical in shape. Likewise, it is fundamental that a funnel can be a convenient "means" for delivery of liquid reactants to an inlet under atmospheric pressure (on which pressure the claims read). Thus, even though those particular limitations noted by the majority are not disclosed in Miner, I do not think the resulting differences are such that the subject matter as a whole is non-obvious. Miner's key teaching is that the mixing rotors will "tend to break up the uniform bubbles of the froth and to shear the latex" if rotated rapidly. An apparatus devised to embody that key teaching of Miner and falling within the scope of appellants' broad claims 8 and 14–17 would be obvious in the context of the above fundamental knowledge. I would affirm all the claims on appeal.

6. With respect to the delivery pressure limitation, appellants disclose:

> Furthermore, in accordance with the instant invention, the mixing of the liquid components in the mixing head is conducted at relatively low pressures. Preferably, such pressures are of the order of 300 p.s.i. or less and may be as little as 50 or 60 p.s.i. With the use of such relatively low mixing pressures, in contrast to the relatively high mixing pressures known in the art; it is possible to achieve a number of desirable objectives.

> Thus, with low mixing pressures, pumps are easier to operate and maintain. Furthermore, the pore size of the foamed product may be controlled by regulation of the speed of the stirring member in the mixing head. Additionally, the mixing head may be of such construction as to allow the interior thereof to be substantially free of deleterious matter which would adversely affect the foamed products made with such mixing head.