55 CCPA

**Application of Chester R. AUSTIN, John Marshall Bertram, Edward J. Prince and Joseph K. Stone, Jr.**

**Patent Appeal No. 7889.**

United States Court of Customs and Patent Appeals.

Feb. 15, 1968.

See also Cust. & Pat.App., 360 F.2d 660.

Brown, Jackson, Boettcher & Dienner, Chicago, Ill., James E. Toomey, Oakland, Cal., Harold L. Jenkins, Washington, D. C. (Bruno J. Verbeck, Chicago, Ill., of counsel) for appellants.

Joseph Schimmel, Washington, D. C. (Joseph Nakamura, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK *.

SMITH, Judge.

The issues presented by this appeal are: (1) whether all of appellants' claims are "unpatentable over" the prior art of record, under 35 U.S.C. § 103, and (2) whether certain of appellants' claims fail to "particularly point out and distinctly claim" the invention, as required by 35 U.S.C. § 112.

The issues arise in an appeal from the decision of the Patent Office Board of Appeals [1] affirming the action of the examiner in finally rejecting all of the claims of appellants' application for a patent.[2]

*The Invention*

Appellants' invention relates to an improvement in the art of producing steel by what is termed "the top-blown oxygen steel refining process." According to the specification, the invention involves the melting and refining of ferrous metal by blowing with oxygen wherein the majority of the heat required for refining the ferrous metal is supplied by oxidation of elements, such as carbonaceous fuel material, present in the molten ferrous bath. The ferrous metal consists of a mixture of solid and molten ferrous metal, the solid portion representing from about 35% to 75% of the total weight of ferrous metal. The molten metal represents, conversely, from about 65% to 25% of the total ferrous metal.

Appellants' specification further points out that in most instances the carbonaceous material and solid ferrous metal should be charged first to the converter

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Messrs. Asp and Behrens, Examiners-in-Chief, and Vertiz, Acting Examiner-in-Chief. The latter wrote the opinion of the board.

2. Serial No. 366,682, filed April 27, 1964 for "Method."

followed by the molten ferrous metal. The carbonaceous material is disposed within the converter so that it is substantially located below the surface of the ferrous charge. The carbonaceous material is present in an amount sufficient to provide heat to complete the melting of the solid ferrous metal in the charge.

Subsequent to adding the charge of carbonaceous material and ferrous metal, oxygen is blown upon the charge from above with the result that the increased amount of solid ferrous metal is efficiently melted and the resultant entire molten bath refined to produce steel.

As to the sequence of charging the materials into the converter, appellants' specification states:

> The carbonaceous fuel may be added to the converter in various ways, it being important as set out above that the fuel be located in such manner that substantially all of it, i. e., the effective part, is disposed below the surface of the ferrous charge. For example, the fuel may be added directly to the bottom of the converter after which the solid metal is added and finally the molten metal. Alternatively, the fuel and solid metal can be mixed together and charged following [sic] by pouring in the molten metal. Also, if desired, the fuel and solid metal can be arranged in alternate layers, with the uppermost or top layer being solid metal.

Appellants also disclose that the converter, at the time of charging, may contain some molten steel produced in a previous heat.

### The Claims

Claim 1, representative of the claims on appeal, is reproduced below:

> 1. In the oxygen steel process for producing steel in an upwardly facing, open mouthed converter from a charge of solid ferrous metal, molten ferrous metal and particulate solid carbonaceous fuel material by blowing oxygen onto said charge vertically from above

through a lance extending through the mouth of said converter wherein most of the heat required for melting and refining the ferrous metal is supplied by oxidation of elements present in the metal in the charge, the improvement which comprises employing 35–75% of the ferrous metal, as solid metal and the rest of the ferrous metal as molten metal introducing substantially all of said solid carbonaceous material into the converter before all of the solid ferrous material, whereby the converter charge comprises solid carbonaceous material submerged in a bath of molten ferrous metal and dissolved therein to a large degree, the carbonaceous fuel material being present in an amount sufficient that upon combustion thereof sufficient heat is provided to complete the melting and refining of the solid ferrous metal, and blowing oxygen from above until all of the ferrous charge is melted and refined.

Claim 2, also in independent form, contains substantially the same introduction as claim 1. It, however, more specifically defines the improvement by the following charging sequence:

> * * * first introducing substantially all of the solid carbonaceous material, next introducing substantially all of the solid ferrous metal, then introducing the molten ferrous metal and blowing oxygen from above until all of said ferrous metal becomes molten and refined, said carbonaceous material being present in an amount sufficient that upon combustion thereof heat is provided to complete the melting and refining of said solid ferrous metal in said charge, whereby the converter charge comprises solid carbonaceous material submerged in and to a large degree dissolved in a bath of molten ferrous metal.

Claims 3 through 5 are dependent upon claim 1 and specify, respectively, that at least a portion of the molten ferrous metal is steel which was retained in the converter from the previous heat, that the particulate solid carbonaceous fuel

material is coke, and that the carbonaceous fuel material is added in an amount of from about 2% to about 35% by weight of said solid ferrous charge.

*The Prior Art*

The references of record are:

| | | |
|---|---|---|
| Bessemer | 51,401 | Dec. 5, 1865 |
| Suess et al. | 2,800,631 | July 23, 1957 |
| Miles (Great Britain) | 642,084 | Aug. 30, 1950 |

The Bessemer patent discloses steel production by a process which involves air-blowing a mixture of carbonaceous fuel and metal. The metal to be converted may be heated while in the solid state or be wholly or in part melted. A solid fuel, such as coke, is placed in the bottom of the converting vessel and ignited. Bessemer desires to use no more fuel than will suffice by its combustion to heat the vessel and the metal sufficiently, while avoiding difficulty in removing unconsumed fuel which may float on the surface of the metal which is later charged into the converter.

Solid metal, such as pig-iron, is added on top of the fuel. Liquid metal is then added and refining is accomplished by bottom blowing with air forced upwardly through the charge from tuyeres in the bottom of the converter.

The Suess and Miles British patents were relied on by the examiner to show that it was known to blow oxygen into a converter from above. Those patents were also relied on by the examiner as disclosing the introduction into the converter of solid carbonaceous material which is burned by the oxygen introduced from above to generate additional heat for the purpose of melting more scrap than could be melted in the absence of the carbonaceous material.

### The Rejection of the Appealed Claims under 35 U.S.C. § 103

We find the issue raised by the rejection of the claims under section 103 is dispositive of the appeal and thus do not reach the issue raised by the rejection of the claims for failure to comply with 35 U.S.C. § 112.

We have considered appellants' arguments concerning the Bessemer disclosure but agree with the position of the examiner, as stated in his Answer:

* * * Whatever else Bessemer may disclose, this patent does disclose first introducing solid carbonaceous material into a converter, next introducing solid ferrous metal and then molten ferrous metal and blowing an oxygen containing gas into the converter to refine the molten metal. In Bessemer the oxygen containing gas is blown in from the bottom of the converter. However, blowing oxygen into a converter from above is known and at present this manner of blowing is commonly used in the art as shown, for example, by the patents to Suess et al. and to Miles. These two last mentioned patents also disclose the introduction of solid carbonaceous material into the converter which is burned by the oxygen introduced from above to generate additional heat for the purpose of melting more scrap than could be melted in the absence of the carbonaceous material. In view of the teaching of either Suess et al. or Miles, it would be obvious to practice the process of Bessemer in a converter of the type disclosed by either Suess et al. or Miles. * * *

Applicant objects to the Bessemer patent because this patent discloses steps not recited in the claims. However, the Examiner finds nothing in these claims which excludes the additional steps to which applicant objects.

We agree with the board that there is "no reversible error" in that rejection

and with the board's further observation:

\* \* \* We see no need for considering Suess which is cumulative to Miles.

\* \* \* Only claim 2 of the instant claims clearly sets forth a charging sequence of first introducing solid carbonaceous material into the converter, next introducing the solid ferrous metal and then adding the molten ferrous metal. This same charging schedule is disclosed by Bessemer in the left-hand column of page 3 starting at the second full paragraph. We agree with the Examiner that it would be obvious to use oxygen in the Bessemer process in view of Miles who specifically refers to his oxygen steel making process as an improvement over the Bessemer process and especially in view of the fact that Miles, like appellants, turns to the use of oxygen for the purpose of increasing the scrap addition to the converter.

The essential differences between appealed claim 2 and the teachings of Bessemer reside in the claimed concept of top-blowing the charge with oxygen rather than bottom-blowing the charge with air. We agree that the Miles British patent is evidence that top-blowing with oxygen is known to the art. The explicit teachings of Miles are also directed to an improvement upon the Bessemer process to permit the use of a higher percentage of scrap, as desired by appellants. We also note the teachings of Miles which relate to top-blowing a bath of molten metal in which the carbon is submerged and dissolved. Miles expressly recognized that oxidation of the carbon supplies a part of the heat necessary to maintain the process.

During the course of prosecution, appellants filed an affidavit executed by Dr. Chipman, dealing with the differences between the processes of the references and the process of the appealed claims. We note that Dr. Chipman is highly qualified in the field of metallurgy. The examiner appeared to have considered the affidavit as being directed to the legal conclusion of obviousness.

The board thought, properly in our view, that opinions set forth in the affidavit were not persuasive of error in the examiner's holding.

We have given weight to Dr. Chipman's affidavit insofar as it reflects factual differences between appellants' invention and the prior art. It, of course, may not be considered dispositive of the legal conclusion to be derived from an evaluation of appellants' invention as a whole. In re Weber, 341 F.2d 143, 52 CCPA 1015 (1965). See In re Chilowsky, 306 F.2d 908, 50 CCPA 806 (1962).

Our review of the record leads us to conclude that the decision of the board should be affirmed.

Affirmed.