55 CCPA

**Application of Manuel F. LEONOR.**

**Patent Appeal No. 7912.**

United States Court of Customs and Patent Appeals

June 6, 1968.

Michael Ebert, New York City, for appellant.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK*, Judges.

SMITH, Judge.

The Patent Office Board of Appeals affirmed the examiner's rejection of claims 15–18 in appellant's application [1] for "Carbonization of Bagasse" upon what appears to us to have been a hindsight reconstruction of the prior art. Since the board's decision violates the intent and spirit of 35 U.S.C. § 103, we reverse. Specifically, the affirmed rejection was that the claims were "unpatentable over Mathieu [2] and what is apparently conceded as old in the art in view of Thompson [3] and McIntosh [4] (35 U.S.C. 103)".

The problem to which the claimed process is directed arises from prior attempts in the art to convert bagasse or other woody fibrus material into charcoal on an economically feasible basis by heating or carbonizing it in a retort. According to appellant, the difficulty with such a process when applied to untreated, green bagasse is that such bagasse has a high moisture content and very low bulk density. Thus, storage or transportation of such bagasse to a carbonizing facility is commercially impractical, due to the large volume of material which must be stored, shipped and processed. Economically, the intrinsic value of the charcoal produced does not appear to have justified use of the prior art processes using green bagasse as the starting material.

As stated in appellants' specification:

* * * One suggestion to obviate the bulk density problem, in the prior art, is to briquette the bagasse before sub-

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 220,153 filed August 29, 1962.

2. U.S. Patent No. 300,384, issued June 17, 1884.

3. U.S. Patent No. 401,607, issued April 16, 1889. Like the board, we regard this particular reference cumulative to McIntosh and will not further discuss it.

4. U.S. Patent No. 1,482,939, issued February 5, 1924.

jecting it to carbonization. While this does provide a solution to the problem, yet the cost of briquetting is substantial.

Appellant, as distinguished from any teaching of the prior art, treats the green bagasse with sulfuric acid. The acid not only dehydrates the bagasse, i. e., removes water from the material, but also densifies it and partially carbonizes it. The acid-treated bagasse is then subjected to full carbonization with heat in the absence of oxygen. Appealed claim 15 defines the process as follows:

15. The process of converting without briquetting a green bagasse having a residual sugar content into a carbonized bagasse of high bulk density, comprising the steps of,

(a) treating the green bagasse with an acid in a concentration bringing about hydrolysis and partial carbonization of the bagasse to an extent sufficient to increase its bulk density to about 30% to 50% higher than the bulk density of green bagasse based on drying both to the same moisture content,

(b) separating the bagasse residue from the liquor produced by the acid treatment, and

(c) heating the separated bagasse residue in the substantial absence of oxygen to produce a fully carbonized bagasse of high bulk density.

The specification further states that the weight reduction and increase in bulk density resulting from pretreatment of bagasse with acid prior to carbonization is of "considerable significance," since the:

* * * green bagasse can be subjected to the digestion and then shipped to suitable points for further treatment, for example, carbonization. The weight modification makes such shipment feasible.

Claim 15 specifically requires the acid treatment of the green bagasse to be such that *hydrolysis and partial carbonization* of the green bagasse occurs to

the extent necessary to increase the bulk density of the treated bagasse by 30% to 50% as compared to the bulk density of the green bagasse.

Appellant acknowledges that carbonization of bagasse by heating has been suggested in the art; this acknowledgment is evidenced by the Mathieu patent. The issue, then, is whether the teachings of the prior art *would, of themselves,* and *without the benefit of appellant's disclosure,* suggest a treatment of green bagasse before carbonizing which would make the invention set forth in the appealed claims obvious under the conditions stated in 35 U.S.C. § 103.

The position of the board with respect to the "partial carbonization" requirement and the resulting extent of the increase of the bulk density as required by the appealed claims, appears to have been:

* * * However, there is no teaching here of the degree of "partial carbonization", or of what function it performs. It is clear from the disclosure that the real purpose of the acid treatment is to densify the bagasse to the extent of 30 to 50% * * * and that the significant carbonization is that performed in the subsequent step of carbonizing in the kiln. The carbonization due to the acid treatment would appear to be only that necessarily accompanying the lengthy treatment necessary to attain the desired degree of densification. * * * In any event, lacking any teaching of the purpose or extent of this partial carbonization, we are at a loss to see how any unobvious result can be attributed to it or how it can be argued that it is not also present in McIntosh.

Thus, the examiner and the board appear to have recognized that Mathieu does not disclose appellant's claimed acid pretreatment step. However, they found in the McIntosh teaching a process for the preparation of charcoal by subjecting "paper, wood pulp or other relatively pure form of cellulose" to "vulcanizing

or parchmentizing chemicals" which are removed by washing prior to placing the material in a retort for complete carbonization.

Appellant admits, for purposes of analysis, that bagasse falls within the group of materials which may be encompassed by the McIntosh process. Moreover, it seems clear that McIntosh contemplates the use of concentrated sulfuric acid since, according to the authorities relied upon by the board, such acid is used in the "parchmentizing" bath of McIntosh.

Appellant does not disagree that various dictionaries disclose the "parchmentizing" chemical referred to by McIntosh as being highly concentrated sulfuric acid. McIntosh states:

* * * Owing to the fact that the dried vulcanized fibre prior to its introduction into the retort has been rendered *exceedingly dense* and tough *by the pressure* to which it was originally subjected *as well as by reason of the action of the parchmentizing chemicals and the subsequent drying*, the finished product of my process is a relatively dense, hard and structurally strong form of carbon. * * * [Emphasis added.]

The board considered the disclosure of McIntosh that the density of various cellulosic materials can be at least partially increased, by treating them with sulfuric acid prior to heating to form charcoal, rendered it obvious to one of ordinary skill in the art to subject green bagasse, a cellulosic raw material known to be useful in the manufacture of charcoal, to a similar acid pretreatment to increase its density before full carbonization.

In the McIntosh process, however, the material is in the form of webs which, after "parchmentizing," are wound upon a *heated* roller while subjected to *heavy pressure*. The resulting "annular structure" is cut, moved from the roller, washed with water until the "parchmentizing" chemicals are removed, and then dried. The dried vulcanized fiber is heated in a suitable retort to such a temperature that all its volatile constituents are driven off. Thus, contrary to appellant's invention, it seems essential to the McIntosh process to use *heat* and *pressure* in addition to the acid treatment to form a dense structure before carbonization takes place.

Thus, in the absence of any teaching that densification of the bagasse could occur to the extent claimed by the appellant by the action of sulfuric acid without the temperature and pressure treatment as taught by McIntosh, the factual basis for the rejection is tenuous at best.

Aside from any question of whether the pertinent portions of McIntosh were selected in light of appellant's teachings, a fact issue underlying the 103 determination is raised by the Othmer[5] affidavit. There Dr. Othmer noted, after

5. Dr. Donald F. Othmer, a distinguished scientist whose technical credentials are stated in his affidavit as follows:
    * * * I hold the degrees of B.Sc., M.S., and Ph.D. (University of Michigan, 1927). I am a Fellow of the American Association for the Advancement of Science and the American Institute of Chemists (Director in 1950), as well as being a member of the American Institute of Chemical Engineers (Director, 1956–59). I am a recipient of the Tyler Award, A.I.Ch.E., and the Barber-Coleman Award, Am. Soc.Eng.Ed., and two honorary doctorates.
    * * * my professional experience includes that of consulting chemical engineer and licensor of process patents since 1931 to numerous companies and Governmental Departments in the United States, Puerto Rico, Sweden and Germany, among others, in the fields of wood utilization and wood distillation, engineering equipment and sugar refining. I am a consultant to the United Nations and the Chemical Corps of the U. S. Army, and to other branches of the Government.
    * * * my present position is that of Professor of Chemical Engineering, and Head of this Department at the Polytechnic Institute of Brooklyn, from 1937 to 1961.
    * * * I have written extensively in the fields of chemical engineering, physical chemistry, and chemical proc-

careful study of the application and the prior art:

\* \* \* But what applicant has discovered is that when using a relatively high concentration of sulphuric acid \* \* \* the resultant structural changes in the bagasse give rise to a striking increase in bulk density as compared to that achieved simply by removing the same water content from the bagasse.

\* \* \* The explanation for this marked change in bulk density appears to be as follows:

\* \* \* The structure of the cellulosic molecules in bagasse, as distinguished from wood, has a sponge-like form, with very large amounts of free intersticial [sic] space within the fibrous mass.

\* \* \* \* \* \*

\* \* \* Inasmuch as the bagasse, as indicated above, has a sponge or web-like structure, the chemical disintegration resulting from the action of the acid demolishes the physical strength of the bagasse fiber, causing the whole sponge-like structure of the bagasse to collapse and thereby produce a much denser material.

Thus, on the question of the extent of the increase in bulk density, the further comment of Dr. Othmer is persuasive. He added:

\* \* \* While hydrolyzing of cellulosic material is well known to chemists, as is evident from the prior art, what was not well known and what in my opinion is unobvious, is the concept of hydrolyzing green bagasse *as the first step* in a charcoal production method *so as markedly to increase the bulk density of the bagasse without the use of heat or pressure,* and to partially carbonize it before subjecting the product to incomplete combustion. Finally, not a single patent of record makes any mention of bulk density, to say nothing of the problem of bulk density within the context of processing bagasse to produce charcoal. [Emphasis added.]

Thus, there is no disclosure of fact in the prior art which supports a legal conclusion that the claimed invention was obvious *at the time it was made.* Admittedly, the Othmer affidavit and appellant's specification provide a ready guide for selecting and combining parts of the prior art processes. If, however, the prior art is considered *without* the Othmer affidavit and *without* appellant's teachings, no fact basis is established in the present record from which to support the legal conclusion that the claimed invention would have been obvious to one of ordinary skill in the art under the conditions of 35 U.S.C. § 103.

Indeed, this seems to be a clear case in which the examiner and the board were unable "to resist the temptation to read into the prior art the teachings of the invention in issue." Graham v. John Deere Co., 383 U.S. 1, 36, 86 S.Ct. 684, 703, 15 L.Ed.2d 545 (1966).

For the foregoing reasons, the decision of the board is reversed.

Reversed.

WORLEY, Chief Judge (dissenting), with whom KIRKPATRICK, Judge, joins.

In view of the disclosure of McIntosh that the density of various cellulosic materials can be at least partially increased by treating them with sulfuric acid *alone* prior to heating to form charcoal, I agree with the board that it would be obvious to one of ordinary skill in the art to subject bagasse, a cellulosic raw material known to be useful in the manufacture of charcoal, to a similar acid pretreatment to increase its density before full carbonization.

esses in American and foreign technical journals, my list of publications including:

    Editor: Fluidization (Reinhold, 1956)
    Co-Author: Fluidization and Fluid Particle Systems (Reinhold, 1960)

    Co-Editor: Encyclopaedia of Chemical Technology (Interscience, 1947–1960)
    Member, Advisory Board: Perry's Chemical Engineers' Handbook.

The majority seems to find that it is "essential to the McIntosh process to use *heat* and *pressure* in addition to the acid treatment to form a dense structure before carbonization takes place." The majority is in error. It is true that, in a preferred embodiment, McIntosh does apply heat and pressure to a web of cellulose by means of rollers prior to driving off "all its volatile constituents" in the full carbonization step. However, McIntosh clearly contemplates simply utilizing "scraps and otherwise waste pieces of parchmentized or vulcanized fiber" as a feed material for his carbonization retort, thus producing "relatively pure granular carbon" without apparent necessity of the scraps or waste being "wound upon a heated roller while subjected to heavy pressure." It is, of course, the disclosure of McIntosh as a whole with which we are concerned, not just the specific examples or preferred embodiments. In re Boe, 53 CCPA 1079, 355 F.2d 961; In re Chapman, 53 CCPA 978, 357 F.2d 418.

In any event, I do not see that appellant's *claims* necessarily exclude application of heat and pressure [1] to attain densification of the bagasse prior to the full carbonization step. It seems to me the majority is deliberately reading limitations into appellant's claims that plainly are not there. That it should not do. In re Fields, 50 CCPA 709, 304 F.2d 691; In re Lundberg, 44 CCPA 909, 244 F.2d 543; In re Kebrich, 40 CCPA 780, 201 F.2d 951.

Unlike the majority here, the examiner and board also properly found the Othmer affidavit to be entitled to little weight. Granted the qualifications of affiant, all that he states in the portions of his affidavit quoted by the majority is, *at best*, that treatment of bagasse with sulfuric acid prior to carbonization

is new.[2] The affidavit, like appellant's brief, fails to controvert—indeed, ignores—the salient teaching of McIntosh, quoted by the majority, which was relied on below in determining the obviousness of appellant's process. In my view, the affidavit is only a statement of opinion not binding on this court, and provides no factual basis for concluding that the invention would be unobvious to one of ordinary skill in the art. In re Carey, 55 CCPA ——, 392 F.2d 646. 157 USPQ 376; In re Austin, 55 CCPA ——, 390 F.2d 721; In re Lindell, 55 CCPA ——, 385 F.2d 453; In re Weber, 52 CCPA 1015, 341 F.2d 143; In re Umbricht, 52 CCPA 1586, 347 F.2d 882; In re Chilowsky, 50 CCPA 806, 306 F.2d 908.

I would affirm.

---

1. As the solicitor points out, the term "without briquetting" in appellant's claims does not suffice to exclude applying heat and/or pressure, as briquetting may occur *without* application of either heat or pressure. See Webster's Third New International Dictionary (1961) under "briquette."

2. In that regard, for further informative historical background of the steps involved and materials used in the manufacture of activated charcoal from various cellulosic materials, including bagasse, see Kirk-Othmer, Encyclopedia of Chemical Technology, Vol. 2, pp. 886–888 (1948).